IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | | |
|---|---|---|
| RASHAWN FARMER-SHAW, Plaintiff | ) | 1:22-CV-00336-RAL |
| vs. | ) | RICHARD A. LANZILLO CHIEF UNITED STATES MAGISTRATE JUDGE |
| FORMER SEC. JOHN WETZEL, et al., Defendants | ) | MEMORANDUM OPINION ON DEFENDANTS' MOTION TO DISMISS |
| | ) | IN RE: ECF NO. 13 |

Plaintiff Rashawn Farmer-Shaw ("Farmer-Shaw"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") at its State Correctional Institution at Albion ("SCI-Albion"), commenced this action pursuant to 42 U.S.C. § 1983 against four current or former DOC officials who he claims violated his constitutional rights by adopting policies that pressured him to receive the COVID-19 vaccine. *See* ECF No. 5. Farmer-Shaw's Amended Complaint is the operative pleading before the Court. *See* ECF No. 21. The Defendants have moved to dismiss Farmer-Shaw's claims pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 13 (motion), 14 (supporting brief), 22 (Notice that Defendants stand on previously filed motion).[1] For the reasons explained herein, the Defendants' motion to dismiss will be GRANTED.[2]

[1] The Defendants filed this motion in response to Farmer-Shaw's original Complaint. The motion prompted Farmer-Shaw to file the Amended Complaint as a matter of right pursuant to Fed. R. Civ. P. 15 (a)(1)(B). Thereafter, the Defendants filed notice of their intent to renew and rely upon their original motion and brief as their response to the Amended Complaint. *See* ECF No. 22. Farmer-Shaw likewise stood on his previously filed response in opposition to the motion. See ECF No. 25.

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

I. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, however, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the factual allegations. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist*., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

Finally, because Farmer-Shaw is proceeding *pro se*, his Amended Complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404

U.S. 519, 520-521 (1972). If the court can reasonably read his *pro se* pleading to state a claim upon which relief can be granted, it will do so despite any failure to accurately label his claims, confusion of legal theories, poor grammar, or awkward sentence structure. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969).

II. Material Facts

In accordance with the foregoing standard of review, the following allegations of the Amended Complaint are accepted as true for purposes of Defendants' motion to dismiss, but only to the extent they state facts rather than conclusions of law or inferences unsupported by facts.

In response to the COVID-19 pandemic, the Commonwealth of Pennsylvania adopted a policy requiring all state employees to be vaccinated against the virus and offered each inmate in the custody of the DOC an incentive of $25 to receive the vaccine. ECF No. 21, ¶¶11-12. Defendant John Wetzel, who served as DOC Secretary at the time, added "coercive and fear tactics" to further encourage inmates to receive the vaccine, and he did not provide a "procedure" to allow inmates "to refuse to be injected without fear of punishment." *Id.*, ¶¶ 7, 14. Defendants Clark and Oliver, each of whom the Amended Complaint identifies as a "Superintendent" and "Facility Manager" at SCI-Albion, implemented Wetzel's unspecified coercive and fear tactics. *Id.*, ¶¶ 5, 6, 8. Defendant Nosok, who served as SCI-Albion's "healthcare administrator" at the time, participated in administering the vaccine shots to prisoners. *Id.* at ¶ 9.

On May 4, 2021, Farmer-Shaw, under unspecified "extreme duress," received the COVID-19 vaccine manufactured by Johnson and Johnson ("J&J"). ECF No. 21, ¶14. In his brief in opposition to Defendants' motion, Farmer-Shaw states that inmates who declined to

receive the vaccine would be assigned to a unit with other unvaccinated inmates and thereby face the loss of prison employment and other prison privileges. *See* ECF No. 19, p. 2. On March 18, 2022, ten months after receiving the vaccine, Farmer-Shaw suffered "massive swelling inside and outside his left leg." *Id.*, ¶ 14. He was sent to a hospital where he was diagnosed with "blood clots," which he attributes to having received the vaccine. *Id.*

## III. Legal Analysis

Liberally construed, Farmer-Shaw's allegations raise potential substantive due process and procedural due process claims under the Fourteenth Amendment, a possible Fourth Amendment "right to privacy" claim, and an Eighth Amendment claim based on deliberate indifference to his serious medical needs. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."). Finally, a generous reading of the Amended Complaint reveals possible state law battery and invasion of privacy claims. Each of these claims is addressed below.

### A. The Substantive Due Process Claim will be Dismissed

"The Due Process Clause of the Fourteenth Amendment substantively protects certain fundamental rights. Among these are the right to be free from unjustified intrusions into the body … [and] the related right to refuse unwanted medical attention." *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990). *See also Washington v. Harper*, 494 U.S. 210, 221–22, 229 (1990) (recognizing that prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment" and stating that the "forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty"). In a substantive due process challenge to government conduct, "the threshold question is whether the behavior of the

government officer is so egregious, so outrageous, that it may be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). What "shocks the conscience" is a legal question for the Court to decide. *Benn v. Univ. Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)).

Farmer-Shaw alleges that he received the vaccine under "duress." ECF No. 21, ¶ 10. He maintains that by virtue of DOC policy, he was forced to choose between receiving the vaccine or being transferred to a different unit where he would be housed with other non-vaccinated inmates and losing his prison job. *Id.*, ¶¶ 9, 13. These allegations do not support that Farmer-Shaw was forced to receive the vaccine against his will or under circumstances that otherwise shock the conscience of the Court. *Accord, Johnson*, 2023 WL 7003693, at *3-4. In rejecting a similar claim in *Johnson*, for example, the Court noted that the plaintiff did not allege that the vaccination policy at issue called for "physical restraint and injection against the inmate's will, or even for misconducts being issued for refusing to be vaccinated." *Id.* at *4. The same is true in this case. Farmer-Shaw acknowledges that he and other inmates were given a choice whether to take the vaccine or to be housed in a unit with other unvaccinated prisoners. *See, e.g.,* ECF No. 21, ¶ 9. An inmate who chose to forego vaccination would be housed with other unvaccinated inmates, which, in turn, could result in loss of certain prison privileges. But this consequence does not elevate the facially reasonable policy to "conscience shocking." Indeed, the DOC's policy has been described as "an eminently reasonable course of action to protect against the spread of the virus undertaken at a time when COVID-19 and its variants were spreading rapidly." *Id.*; *see also Walker v. Sorber*, 2022 WL 4586137, at *5, 7 (E.D. Pa. Sept. 298, 2022) ("Due to the necessarily close and continued contact that prisoners experience, SCI-Phoenix had every reason to attempt to prevent a large-scale outbreak by segregating

vaccinated from unvaccinated prisoners[.]"); *Fennell v. Wetzel*, 2023 WL 1997116, at *5 (M.D. Pa. Feb. 14, 2023). Furthermore, "even when a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987). "Because it is difficult to social distance in a correctional setting," prison officials exercise reasonable discretion when they separate the unvaccinated from the vaccinated or inmates vulnerable to serious complications from the COVID-19 virus. *Jones v. County of Allegheny*, 2022 WL 2806779, at *7 (W.D. Pa. June 24, 2020).

Farmer-Shaw attempts to bolster his Fourteenth Amendment claim by alleging generally that he received the vaccine without his "informed consent." ECF No. 21, ¶ 9. He does not state what additional information he believes he should have been provided to him, although he does allege that "[d]uring the spring of 2021, the National Blood Clot alliance placed data on the internet about restrictions the FDA placed on J&J COVID-19 because of blood clotting." *Id.*, ¶ 17. The Third Circuit has held that "convicted prisoners ... retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives." *White*, 897 F.2d at 113; *see also Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006) (concluding that "the Fourteenth Amendment's recognized liberty interest in an individual's right to refuse medical treatment carries with it a concomitant right to such information as a reasonable patient would deem necessary to make an informed decision regarding medical treatment"). "The scope of the right to refuse treatment, however, must be circumscribed by legitimate countervailing State interests." *White*, 897 F.2d at 113. "To establish a violation of the constitutional right to medical information, a prisoner must satisfy an objective reasonableness standard, must demonstrate that the defendant acted with the requisite state of mind, and must make a showing

that the lack of information impaired his right to refuse treatment." *Mills v.* Rogers, 2020 WL 4473003, at *5 (M.D. Pa. Aug. 4, 2020) (citing *Pabon*, 459 F.3d at 250)). The Amended Complaint acknowledges that Farmer-Shaw was given a choice whether to receive the vaccine and does not allege that he was denied any information that he requested in connection with that decision. His conclusory allegation that he did not give his informed consent to the vaccination adds no support to his Fourteenth Amendment claim.

For these reasons, the Amended Complaint fails to state a Fourteenth Amendment substantive due process claim against any Defendant.

B. The Procedural Due Process Claim will be Dismissed.

The Court also understands Farmer-Shaw to assert a procedural due process claim under the Fourteenth Amendment. For example, Farmer-Shaw pleads that he was not given an opportunity—via a hearing—to explain his objections to receiving the COVID-19 vaccination. *See, e.g.,* ECF No. 21, ¶¶ 21-23, 28. "The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically notice and an opportunity to be heard." *Popichak v. Peurifoy*, 2023 WL 6810086, at *7 (E.D. Pa. Oct. 16, 2023). The facts alleged in the Amended Complaint do not support a denial of procedural due process. Because Farmer-Shaw was given a choice regarding his medical treatment, including a right to refuse treatment, his acceptance of the vaccine did not impact any property or liberty interest protected by the Due Process Clause of the Fourteenth Amendment. A threshold requirement for any procedural due process claim is that the plaintiff demonstrate that government action has injured a constitutionally protected property or liberty interest. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The Amended Complaint supports no such injury. Therefore, Wetzel did not violate Farmer-Shaw's procedural due process rights when he failed to provide

him with an opportunity to "explain why he fear[ed] being injected." ECF No. 21, ¶ 21. *See Graziano v. Pa. Dep't Corr.*, 2023 WL 6389756, at *27 (W.D. Pa. Sept. 30, 2023). Farmer-Shaw asserts that refusal to receive the vaccine would have resulted in his transfer to a unit with other unvaccinated inmates and potentially the loss of his prison job or limitations on his social and religious activities. But Farmer-Shaw cannot claim that he was denied procedural due process in connection with any such action because he was not subjected to any such action.

C. The Fourth Amendment invasion of privacy claim will be dismissed.

The Amended Complaint includes several allegations that Farmer-Shaw was subjected to an invasion of his privacy ("security of the body") in connection with his receipt of the COVID-19 vaccine. *See, e.g.*, ECF No. 21, ¶¶ 28-29. To the extent these allegations implicate the substantive due process component of the Fourteenth Amendment, they have been addressed, *supra*. To the extent these allegations may also implicate the Fourth Amendment, they also fail to support a claim.

"The Fourth Amendment, binding on the States by the Fourteenth Amendment, provides that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *Maryland v. King*, 569 U.S. 435, 446 (2013). "The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction." *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 613-14 (1989). "[I]ntrusions into the human body," such as drawing an individual's blood to test it for alcohol content or swabbing an individual's mouth for DNA, have been deemed searches that implicate the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767-71. The Court will assume, without deciding, that the injection of the J&J vaccination constituted seizure for purposes of the Fourth Amendment.

*See, e.g., Mercado v. Columbus Regional Hospital*, 2022 WL 17268312, at *6 (S.D. Ind. Nov. 28, 2022) (COVID-19 nasal test was a search); *Streight v. Pritzker*, 2021 WL 4306146, at *5 (N.D. Ill. Sept. 22, 2021) (COVID-19 saliva test was a search).

Any Fourth Amendment claim in this case clearly fails, however, because the asserted seizure was voluntary. *See* ECF No. 21, ¶ 9 (Defendants "administered the shots to the Plaintiff … and he went along with the policy"). The Amended Complaint acknowledges that Farmer-Shaw was given the choice of receiving the vaccine or being housed with other unvaccinated inmates. In addition, the purported seizure was also reasonable. "The Fourth Amendment … grants inmates a limited right of bodily privacy, subject to reasonable intrusions necessitated by the prison setting." *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016). In balancing the interests of bodily privacy and prison safety, the Court "must give considerable weight to the 'place in which [the search] is conducted'—prisons being 'places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct,' —and considerable deference to 'the justification for initiating it.'" *Shears v. Hagerty*, 2023 WL 7497707, at *3 (W.D. Pa. Nov. 13, 2023) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)). "[I]mpinging on an inmate's constitutional rights must be upheld if it is reasonably related to legitimate penological interests." *Id*. (citing *Parkell*, 833 F.3d at 326)). The "contours of prisoner's Fourth Amendment rights are very narrow" and "[i]nmate search policies are constitutional if they strike a reasonable balance between inmate privacy and the needs of the institutions." *Lyons v. Wetzel*, 2023 WL 6368309, at *11 (M.D. Pa. Aug. 21, 2023) (citing *Parkell*, 833 F.3d at 326)). As previously discussed, the DOC's vaccination program was reasonably related to the legitimate penological interest in protecting inmates and staff from the spread of the COVID-19 virus. *See Johnson v. Kuhn*, 2022 WL 4288277, at *3 (D.N.J. Sept. 15,

2022); *Azcona v. Ellis*, No. 20-8526, 2021 WL 1139843, at *2 (D.N.J. Mar. 25, 2021) (finding quarantining a COVID-19 positive detainee "a legitimate response to an unprecedented situation, undertaken to prevent further spread of the virus"); *Wilcox v. Lancour*, 2021 WL 230113 (W.D. Mich. Jan. 22, 2021) ("Defendants had a legitimate-indeed compelling-governmental interest in testing all prisoners for the presence of the SARS-COV-2 virus [via nasal swab], in order to meet its obligations to control contagion and to protect its other prisoners and staff."); *Webb v. Johnson*, No. 21-3042, 2021 WL 2002721, at *5-8 (D. Neb. May 19, 2021) (finding a prisoner's argument that he has a right to refuse to have his temperature be taken for purposes of COVID-19 testing unsupportable). As such, it did not impinge on Farmer-Shaw's rights under the Fourth Amendment.

        D.     Any equal protection claim will be dismissed.

Farmer-Shaw alleges that although prisoners were "coerced" into getting vaccinated, no such imposition was placed on the staff working at the facility: "only 49% got vaccinated while 88% of the prisoners were vaccinated. None of the guards or upper management were punished for refusing." ECF No. 21, ¶ 11. To the extent Farmer-Shaw intends such allegations as asserting an equal protection claim, they fail. To state an equal protection claim under the Fourteenth Amendment, "a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated … and that there was no rational basis for such treatment." *Godfrey v. Little*, 2023 WL 6276702, at *4 (M.D. Pa. Sept. 26, 223) (citing *Phillips v. County of Allegheny,* 515 F.3d 224, 243 (3d Cir. 2008)). Here, Farmer-Shaw does not allege that he was treated differently from any other similarly situated person or group. He acknowledges that the policy he challenges applied to all inmates. Even as to prison guards and other prison employees he did not receive disparate treatment. He was given the opportunity to

decline to be vaccinated, as they were. He alleges that the staff members were not punished for refusing the vaccine, but neither were inmates. Inmates who chose not to be vaccinated were rationally separated from those who were, not as punishment, but for legitimate penological and health reasons.

E. Any Eighth Amendment claim will be dismissed.

The Eighth Amendment prevents prison officials from acting with deliberate indifference to prisoners' serious medical needs "by intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Coleman v. Stanford,* 2022WL 7553915 2802403, at *2 (3d Cir. July 18, 2022) (quoting *Pearson v. Prison Health Servs*., 850 F.3d 526, 534 (3d Cir. 2017)). To state an Eighth Amendment claim under § 1983, Farmer-Shaw must allege facts to support (1) that his medical needs were serious, and (2) that prison officials were deliberately indifferent to those needs. *Pearson,* 850 F.3d at 534; *Anderson v. Price*, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (citing *Pearson*); *Lloyd v. Wetzel*, 2023 WL 4053870, at *8 (Mar. 30, 2023). The Amended Complaint supports neither element.

The Amended Complaint states only that on May 4, 2021, "Defendant Nosok the healthcare administrator and his staff administered the shots to the Plaintiff." ECF No. 21, ¶¶ 9, 14. Approximately ten months later, Farmer-Shaw was treated for "extensive blood clots" in his leg. *Id.*, ¶ 14. A nurse, perhaps at the Meadville Medical Center (her place of employment is not identified in the Amended Complaint) told Farmer-Shaw "that the vaccines are the cause of the massive extensive blood clotting in and outside the left leg." *Id.*, ¶ 16. These scant allegations are insufficient to state an Eighth Amendment deliberate indifference claim. Indeed, Farmer-Shaw acknowledges that he was given medical treatment as protection from the COVID-19

virus. He does not allege that he suffered any immediate harm from the administration of the vaccine or that he presented with any condition that involved risks to him that prison personnel knew outweighed the benefits of the vaccine. The fact that ten months later he experienced a serious condition that he and an unidentified medical provider associated with the vaccine does not change this analysis. Therefore, to the extent the Amended Complaint raises an Eighth Amendment deliberate indifference claim, that claim will be dismissed.[3]

        F.      Any state law claims will be dismissed.

The Amended Complaint appears also to raise potential claims for battery and invasion of privacy under Pennsylvania state law. Federal courts normally decline to exercise supplemental jurisdiction where all federal claims have been dismissed and only state law claims remain. *See Chapman v. United States*, 480 F. Supp. 601, 612-14 (M.D. Pa. 2020) (citing *Kach v. Hose*, 589 F.3d 626m 650 (3d Cir. 2009)). Because the Court intends to grant Farmer-Shaw leave to file a second amended complaint to cure deficiencies in his federal claims, the Court will proceed to analyze the legal sufficiency of his state law claims.

        1.      Battery

As noted above, Farmer-Shaw contends that although he agreed to be vaccinated, he did so without providing informed consent. In certain situations, such an allegation could state a claim against a medical provider for battery under state law. *See, e.g., Sinclair by Sinclair v. Block*, 633 A.2d 1137, 1140 (Pa. 1993). However, the Third Circuit has recognized that under

---

[3] To the extent the Amended Complaint can be read as also raising a First Amendment retaliation claim, the claim fails because Farmer-Shaw alleges no facts to support that he engaged in any protected conduct that prompted any Defendant to take an adverse action against him or that he lost any privileges or other benefits based on his personal reluctance to be vaccinated. *See, e.g., Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citations omitted). *See also Nunez v. Wetzel*, 2023 WL 2385931, at *4 (M.D. Pa. Mar. 8, 2023) (dismissing retaliation claim involving "coerced vaccination" and deferring to "the broad discretion granted to prison authorities in their attempt to control the spread of COVID-19 within their facility").

Pennsylvania law such a claim "should be limited to those cases involving surgical or operative procedures." *Berger v. Hahnemann Univ. Hosp.*, 765 Fed. Appx. 699, 705 (3d Cir. 2019) (quoting *Wu v. Spence*, 605 A.2d 395 (Pa. Super. Ct. 1992)). Here, Farmer-Shaw has not identified any surgical or operative procedure that would have required his informed consent. Thus, to the extent he brings a claim of state law battery, it will be dismissed. *See id.*; *Boyer v. Smith*, 497 A.2d 646, 649 (Pa. Super. Ct. 1985).

          2.        Invasion of Privacy

Although the Amended Complaint appears to base his privacy claim in the United States Constitution, it also may be read to assert an invasion of privacy claim under Pennsylvania state law. "Pennsylvania law recognizes four torts under the umbrella of invasion of privacy: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places the other in a false light before the public." *Burger v. Blair Med. Assocs., Inc.*, 964 A.2d 374, 376-77 (2009) (citing RESTATEMENT (SECOND) OF TORTS, §§ 652B-E (1977)). *See also Boring v. Google*, 362 Fed. Appx. 273, 278 (3d Cir. 2010).

None of Farmer-Shaw's allegations implicate misappropriation of his name or likeness, any publicity he received concerning his private life, or placing him in a false light before the public. The only tort remotely relevant may be intrusion into his "seclusion." To assert an "intrusion upon seclusion" claim under Pennsylvania law, Farmer-Shaw must have alleged facts to support "that there was an intentional intrusion on the seclusion of [his] private concerns, which was substantial and highly offensive to a reasonable person." *Shaner v. UPMC Susquehanna*, 2020 WL 1460717, at *2 (Pa. Supr. Ct. Mar. 24, 2020) (quoting *Pro Golf Mfg. v. Tribune Review Newspapers Co.*, 809 A.2d 243, 247 (Pa. Super. 2002). The information

disclosed must have "caused mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Id*. The Amended Complaint supports none of the elements of such a claim.

IV. Leave to Amend

In civil rights cases, "district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc*., 482 F.3d 247, 251 (3d Cir. 2007). Leave to amend should be liberally granted "when the party seeking leave to amend appears pro se. Pro se plaintiffs should be given an opportunity to amend their complaint unless it clearly appears that the deficiency cannot be overcome by amendment." *Burgess El v. Sanders*, 2023 WL 7089929, at *4 (E.D. Pa. Oct. 26, 2023) (citation omitted). Although Farmer-Shaw has already been afforded one opportunity to amend following Defendants' motion to dismiss, the Court cannot say with certainty that the deficiencies noted herein cannot be cured by further amendment. Therefore, the Court will dismiss Farmer-Shaw's Amended Complaint without prejudice and will permit him to file a second amended complaint within twenty-one (21) days from the date of the Court's accompanying Order. Farmer-Shaw should forego attempting to amend any dismissed claim concerning which he cannot in good faith allege additional facts to cure the deficiencies in that claim. However, any second amended complaint must include all claims that Farmer-Shaw intends to continue to assert against any one or more of the Defendants. Any second amended complaint must stand on its own and may not incorporate by reference or otherwise rely on the allegations or claims of the original Complaint.

If Farmer-Shaw fails to file a second amended complaint within twenty-one (21) days of the date of the Court's Order, this action will be dismissed with prejudice and without further notice.

An appropriate order will follow.

DATED this 28th day of November, 2023.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE