IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

RASHAWN FARMER-SHAW,

Plaintiff

vs.

FORMER SEC. JOHN WETZEL, et al.,

Defendants

)
)
)
)
)
)
)
)
)
)
)
)

No. 1:22-CV-00336-RAL

RICHARD A. LANZILLO
Chief United States Magistrate Judge

MEMORANDUM OPINION ON
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Re: ECF NO. 63

## I. Introduction

Plaintiff Rashawn Farmer-Shaw ("Farmer-Shaw"), an inmate in the custody of

the Pennsylvania Department of Corrections ("DOC"), commenced this action against

the former Secretary of the DOC, John Wetzel, and three officials at the State

Correctional Institution at Albion ("SCI-Albion"): former Superintendent Clark,

Superintendent Oliver, and Healthcare Administrator Nosko.[1]  His claims relate to

DOC policies and procedures that allegedly caused Farmer-Shaw to receive the

Johnson & Johnson ("J&J") COVID-19 vaccine without his informed consent.  Earlier

in this litigation, the Court granted Defendants' motion to dismiss Farmer-Shaw's

Amended Complaint because it failed to allege facts to support his claims.  *See* ECF

---

[1] Farmer-Shaw refers to this defendant as "Norsok."  Defendants' submissions indicate that the proper
spelling is "Nosko."

No. 28. [2] The Court dismissed Farmer-Shaw's claims without prejudice to his filing a further amendment to cure their deficiencies. *See* ECF No. 29.

Thereafter, Farmer-Shaw filed a Second Amended Complaint ("SAC") which removed Oliver as a defendant and again claimed Defendants Wetzel, Clark, and Nosko violated his constitutional rights by adopting and implementing coercive vaccination policies and failing to provide an informed consent procedure. ECF No. 32.[3] The SAC asserted two claims: (1) a Fourth Amendment unlawful seizure claim based on DOC policies that restricted unvaccinated inmates' activities and interactions; and (2) a Fourteenth Amendment substantive due process claim based on Defendants' alleged failure to disclose information known to them concerning the risks associated with the J&J vaccine. *See id.* Defendants again moved to dismiss, arguing Farmer-Shaw failed to correct any of the pleading deficiencies in his Amended Complaint. *See* ECF No. 33. The Court granted Defendants' motion in part and dismissed all claims against Defendant Clark. *See* ECF No. 44. The Court also dismissed Farmer-Shaw's Fourth Amendment claim, finding the facts alleged failed to show he was coerced into accepting the J&J vaccine. *See id.* The Court allowed his Fourteenth Amendment informed consent claim against Defendants Wetzel and Nosko to proceed, finding it was supported by sufficient factual allegations to survive beyond the pleading stage. *See id.*

---

[2] All parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings under 28 U.S.C. §636(c).

[3] Farmer-Shaw sues Defendants in both their individual capacities and their official capacities. *See* ECF No. 21, ¶¶ 3–5.

Defendants Wetzel and Nosko answered the SAC (ECF No. 48), and subsequently moved for judgment on the pleadings (ECF No. 50). The Court denied Defendants' motion, finding material factual issues precluded a judgment in their favor. *See* ECF No. 56. Specifically, Defendants' proffered exhibits did not establish that they disclosed to Farmer-Shaw risks associated with the J&J vaccine or that he gave informed consent to receive the vaccine. *Id.*, pp. 6–7. The Court thus permitted further factual development of the record with respect to Farmer-Shaw's informed consent claim, and granted in part his motion to serve additional discovery requests upon Defendants. *See* ECF No. 60.

Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 63.[4] They first argue Farmer-Shaw cannot establish the necessary elements of his informed consent claim. ECF No. 64, pp. 5–11. Next, Defendants contend that even if he can establish a violation of his right to informed consent, such right is outweighed by countervailing state interests. *Id.*, pp. 11–13. They further argue Farmer-Shaw's claim is barred by the Public Readiness and Emergency Preparedness Act ("PREP Act"). *Id.*, pp. 13–17. Finally, Defendants contend Farmer-Shaw cannot state facts to support his damages claims. *Id.*, pp. 17–18.

Farmer-Shaw filed an Opposition Motion and a Brief in Opposition to Defendants' motion accompanied by a Concise Statement of Material Facts and

---

[4] The motion is accompanied by a Concise Statement of Material Facts, supporting Brief, and Appendix of Exhibits. ECF Nos. 64, 65, and 66.

supporting exhibits. ECF Nos. 79, 80, and 81.[5] The matter is now ripe for decision. For the reasons discussed herein, Defendants' motion will be granted.

## II.    Material Facts[6]

Farmer-Shaw is incarcerated at SCI-Albion, where the events underlying this action took place. ECF No. 66, ¶ 3; ECF No. 32, ¶ 2. In May 2021, Defendant Wetzel was the Secretary of the DOC and Defendant Nosko was the Corrections Healthcare Administrator at SCI-Albion. ECF No. 66, ¶¶ 1–2.

---

[5] Local Rule 56 requires non-moving parties to a motion for summary judgment to file a responsive concise statement in which they must: respond to each numbered paragraph in the movant's concise statement; admit or deny the facts contained in the movant's concise statement; set forth the basis for denial of any asserted fact with appropriate citation to the record; and set forth, in separately numbered paragraphs, any additional material facts upon which the party relies in opposition to the motion. *See* LCvR 56(C)(1). Courts in the Western District of Pennsylvania require strict compliance with the provisions of Local Rule 56. *See, e.g., Coleman v. Tice*, 2018 WL 5724125, at *2 n.3 (W.D. Pa. Oct. 10, 2018), *report and recommendation adopted*, 2018 WL 5722316 (W.D. Pa. Nov. 1, 2018); *First Guard Ins. Co. v. Bloom Services, Inc.*, 2018 WL 949224, at *2–3 (W.D. Pa. Feb. 16, 2018); *Hughes v. Allegheny Cnty. Airport Auth.*, 2017 WL 2880875, at *2 (W.D. Pa. July 6, 2017), *aff'd*, 728 Fed Appx 140 (3d Cir. 2018). This strict compliance applies equally to pro se plaintiffs and those represented by counsel. *See, e.g., Peay v. Sager*, 2022 WL 565391, at *1–2 (W.D. Pa. Feb. 1, 2022), *report and recommendation adopted*, 2022 WL 562936 (W.D. Pa. Feb. 24, 2022).

"A non-moving party faces severe consequences for not properly responding to a moving party's concise statement." *Hughes*, 2017 WL 2880875, at *1. All facts "set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56(E). Although Farmer-Shaw sets forth additional material facts in his concise statement, he failed to specifically admit or deny the assertions in Defendants' concise statement. Accordingly, the Court will deem admitted any properly supported statement of material fact in Defendants' concise statement that is not controverted by Farmer-Shaw's separate concise statement, or to which Farmer-Shaw has made a contrary assertion without record support. However, the Court will consider any contrary facts apparent from admissible evidence in the record to the extent such evidence may support Farmer-Shaw's claims or contradict Defendants' assertions of fact. *See Peay*, 2022 WL 565391, at *2. Finally, because Defendants did not file a reply to Farmer-Shaw's assertions of fact, the Court will also deem admitted any properly supported statement of material fact in Farmer-Shaw's responsive concise statement. *See* LCvR 56(E).

[6] The following facts derive primarily from the parties' Local Rule 56(B) and (C) Concise Statement of Material Facts and Responsive Concise Statement and accompanying exhibits.

On May 3, 2021, Defendant Wetzel issued a memo addressed to all inmates

regarding the J&J vaccine administration.  ECF No. 65-1, p. 1.  The memo stated:

> Following a thorough safety review, the U.S. FDA and the
> CDC have determined that the recommended pause
> regarding the use of the Johnson & Johnson (Janssen)
> COVID-19 Vaccine in the U.S. should be lifted and the use
> of the vaccine should resume.   Both agencies have
> confidence that this vaccine is safe and effective in
> preventing   COVID-19  with   the   benefits   greatly
> outweighing the risk of any side effects.  After a thorough
> review of all data available, the Department is resuming
> vaccines today, May 3.
>
> Reports of adverse events following the use of the [J&J]
> Vaccine suggest an increased risk of thrombosis (formation
> of blood clots) involving large blood vessels of the abdomen
> and the veins of the lower extremities (i.e. legs) *combined
> with* thrombocytopenia (low platelet level/low number of
> platelets in the blood).   Platelets help blood clot, by
> clumping and forming plugs in blood vessel injuries, which
> stops bleeding.    Onset of symptoms may appear
> approximately one to two weeks after vaccination.  Most
> cases of thrombosis *with* thrombocytopenia that were
> reported after receiving the Janssen Vaccine have occurred
> in females ages 18 through 49 years of age.  Based on
> current available evidence, the relationship between
> thrombosis *with* thrombocytopenia and the Janssen
> Vaccine is conceivable, but rare.   However, out of an
> abundance of caution, the PA DOC will continue to monitor
> reported side effects/adverse reactions, to include *any* cases
> of   thrombosis   with,   or   without   associated
> thrombocytopenia.

*Id.*  The memo further stated that "[p]rior to vaccine administration, those consenting

to receive the vaccine will have the opportunity to review the [revised] Janssen

COVID-19 Vaccine Fact Sheet" containing "information about the risks which have

occurred in a very small number of people who received the [J&J] vaccine." *Id.*  The

memo advised inmates experiencing injection site reactions, fatigue, muscle pain,

nausea, or fever to sign up for sick call, and to immediately notify a staff member for

symptoms of chest pain, shortness of breath, leg swelling, abdominal pain,

neurological issues, or unusual bruising. *Id.*, p. 2. The memo concluded:

> We understand that the pause may be concerning to those
> yet to receive the vaccination. It is important to read,
> understand, and ask any questions you may have prior to
> receiving the vaccine so that you are comfortable.
> Remember, receiving the vaccine may protect you from
> becoming sicker, or even hospitalized if you become
> infected with the virus, and we strongly encourage
> everyone eligible to receive the vaccine.

*Id.* The Unit Managers distributed copies of the memo to inmates on their housing

units, and it "was continuously displayed on the inmate channel beginning on May 3,

2021." ECF No. 65-4, ¶ 14; ECF No. 65-5, ¶¶ 4–5. "The inmate channel plays on

televisions on the units and is visible from the individual cells," and "all inmates"

have access to it "at all times." ECF No. 65-4, ¶¶ 15–16.

Pursuant to the inmate vaccination procedure at SCI-Albion in May 2021, the

Unit Managers compiled a list of inmates who wanted the vaccine and gave it to the

Infection Control Nurse. ECF No. 65-5, ¶¶ 6–7. Nursing teams then went block to

block to administer the vaccines. *Id.*, ¶ 8. "One nurse handled consents, one nurse

handled pre-injection temperatures, and one or two nurses handled the actual

administration of the vaccine to the inmates who requested it and signed the

consent." *Id.*, ¶ 9. Additionally, "any inmate who requested a copy of the vaccine

information sheet was afforded that opportunity." *Id.*, ¶ 10.

On May 4, 2021, a nursing team administered the J&J vaccine to Farmer-

Shaw. *See* ECF No. 65-3; ECF No. 65-5, ¶ 11. He exited his cell with a group of five

or six other inmates and was instructed to sign the consent form, then received the vaccine. ECF No. 81-2, ¶¶ 1, 5. The J&J Consent Form consists of two pages with a signature block at the bottom of each page. ECF No. 65-3. Pages one and two contain a Pre-Vaccination Questionnaire; page one lists the vaccine ingredients; and page two has a "Consent for Vaccination" paragraph. The "Consent for Vaccination" paragraph provides that the inmate acknowledges vaccination is voluntary, that they have been offered the J&J Fact Sheet for review, that they understand the benefits and risks of vaccination, that they have had the opportunity to review the Secretary's memo and to have questions answered by a medical professional, and that they authorize the DOC to administer the J&J vaccine to them. *Id.*, p. 2. Farmer-Shaw answered the questions on both pages of the J&J Consent Form and signed the bottom of page one, but did not sign the bottom of page two. *See* ECF No. 65-3.

On December 17, 2021, Secretary Little issued a memo to all inmates stating that, based on a recommendation to the CDC that the Moderna and Pfizer vaccines should be utilized over J&J due to "concerns over rare and sometimes fatal blood clots," the DOC would immediately stop administering J&J to inmates. ECF No. 81-14. The memo advised that inmates "who received the [J&J] vaccine should be aware of this risk, and immediately seek medical advice if they begin to experience side effects . . . includ[ing] severe headache, abdominal pain, leg pain or shortness of breath within three weeks after receiving the shot." *Id.* The memo further stated the DOC would "continue [to] offer the Moderna vaccine . . . as well as the $25 incentive for receiving the vaccine and booster shot." *Id.*

On January 11, 2022, Farmer-Shaw signed a COVID-19 mRNA Vaccine Consent Form and medical personnel at SCI-Albion administered the Moderna vaccine to him. ECF No. 65-2.

On March 17, 2022, a medical provider at SCI-Albion saw Farmer-Shaw for a follow up appointment and documented abnormal lab work and a 2-month history of swelling in the left leg. ECF No. 65-6, p. 5; ECF No. 81-11, p. 6. An ultrasound at Meadville Medical Center the following day revealed "a non-occlusive DVT of his left popliteal vein with significant clot burden." ECF No. 65-6, p. 1; ECF No. 81-11, p. 5.

## III.  Standard of Review

Federal Rule of Civil Procedure 56(a) requires the district court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under this standard "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Loc. 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

8

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. *Id.*; *see Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (nonmovant cannot "rely merely upon bare assertions, conclusory allegations or suspicions"). Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories, or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Finally, where, like here, a party is proceeding pro se, the court has an obligation to construe the pro se party's filings "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, despite this liberal interpretation, the same standards

9

for summary judgment apply to *pro se* litigants," *Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009), and "a pro se plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment," *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted); *see Winfield v. Mazurkiewicz*, 2012 WL 4343176, at *1 (W.D. Pa. Sept. 21, 2012). In other words, the party opposing summary judgment, whether or not pro se, "must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial." *Watson*, 629 F. Supp. 2d at 485.

## IV.   Discussion and Analysis

This action is proceeding solely on Farmer-Shaw's Fourteenth Amendment substantive due process claim against Defendants Wetzel and Nosko. This claim is premised upon allegations that Defendants failed to disclose information known to them concerning the risks of the J&J vaccine and, in doing so, denied Farmer-Shaw informed consent to receiving the vaccine.[7]

---

[7] As an initial matter, Farmer-Shaw's official capacity claims against Defendants for money damages fail as matter of law. The Eleventh Amendment to the United States Constitution precludes suits against a state and its agencies in federal court. U.S. Const. amend XI; *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This protection extends to state employees sued in their official capacities. *See A.W. v. Jersey City Pub. Sch.*, 341 F.3d 234, 238 (3d Cir. 2003); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

Here, the DOC is an agency of the Commonwealth of Pennsylvania, and the Commonwealth has not waived its Eleventh Amendment immunity from lawsuits filed in federal court. Therefore, the Commonwealth, its departments, and their officials sued in their official capacities are immune from suit in federal court. *Johnson v. Wenerowicz*, 440 Fed Appx 60, 62 (3d Cir. 2011); *Talbert v. Dep't of Corr.*, 2022 WL 17177479, at *4 (E.D. Pa. Nov. 23, 2022). As such, Farmer-Shaw's official capacity claims against Defendants for money damages are barred by the Eleventh Amendment. *Downey v.*

To prevail on an informed consent substantive due process claim, a prisoner must prove "(1) he was deprived of information that a reasonable patient would deem necessary to make an informed decision about his medical treatment, (2) the defendant[s] acted with deliberate indifference to [his] right to refuse treatment, and (3) if [he] had received the information, he would have refused the treatment." *Knight v. Grossman*, 942 F.3d 336, 344 (7th Cir. 2019); *see also White v. Napoleon*, 897 F.2d 103, 113 (3d. Cir. 1990) ("convicted prisoners . . . retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives"). Even if the prisoner establishes that his right to informed consent has been violated, the Court must then "take the second and final step of balancing the prisoner's right to informed consent against countervailing state interests." *Knight*, 942 F.3d at 344. "Liability arises only if, in the end, the prisoner's right outweighs the state interests." *Id.*

---

*Pa. Dep't of Corr.*, 968 F.3d 299, 310–11 (3d Cir. 2020); *Washington v. Wetzel*, 2022 WL 1782509, at *3 (W.D. Pa. June 1, 2022), *aff'd*, 2024 WL 5154024 (3d Cir. Dec. 18, 2024).

Farmer-Shaw's requests for declaratory and injunctive relief also cannot save his official capacity claims. Eleventh Amendment immunity does not bar suits against state officials in their official capacities for prospective injunctive relief when they commit an ongoing violation of federal law. *Will*, 491 U.S. at 71 n.10; *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). Here, however, no claim for injunctive relief is available in this action because Plaintiff does not show, and the record does not reflect, that his injury was caused by Defendants' allegedly unconstitutional conduct. *J. C. v. Ford*, 674 Fed Appx 230, 232 (3d Cir. 2016). Additionally, Farmer-Shaw's complaint fails to provide a proper basis for declaratory relief because "even if the defendants violated his rights in the past, he is not entitled to a declaration to that effect." *Naranjo v. City of Philadelphia*, 626 Fed Appx 353, 356, n.1 (3d Cir. 2015); *see Washington*, 2022 WL 1782509, at * 4 ("declaratory judgment is unavailable 'solely to adjudicate past conduct' or 'to proclaim that one party is liable to another'" (citation omitted)); *Donahue v. Super. Ct. of Pa.*, 2019 WL 913812, at *3 (M.D. Pa. Feb. 25, 2019) ("[d]eclaratory judgment is not meant to adjudicate alleged past unlawful activity"). Accordingly, the only remaining claim for relief in this action is Farmer-Shaw's claim for money damages against Defendants in their individual capacities.

When evaluating a substantive due process challenge to government conduct, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). "Whether an incident 'shocks the conscience' is a matter of law for the courts to decide." *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) (citing *Rochin v. California*, 342 U.S. 165, 172 (1952)). "Neither negligence nor gross negligence is enough" to meet this standard, *Knight*, 942 F.3d at 343, and "[t]he simple lack of due care does not make out a violation of . . . the Due Process Clause," *Pabon v. Wright*, 459 F.3d 241, 250 (2d Cir. 2006). Further, "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference that 'shocks the conscience' for a substantive due process violation." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (quoting *Lewis*, 523 U.S. at 486). Relevant here, a prison official is deliberately indifferent to a prisoner's right to refuse treatment if the official "subjectively knows . . . that the [prisoner] would want to know the medical information being withheld in order to decide whether to refuse the treatment." *Knight*, 942 F.3d at 343. In other words, the prisoner must show the official "acted with the intent to induce [the prisoner] to undergo treatment that he otherwise might have declined." *Pabon*, 459 F.3d at 254.

Farmer-Shaw maintains Defendants' failure to disclose to him the risks associated with the J&J vaccine caused him to receive the vaccine without his informed consent. He alleges "no policy existed for informed consent" when medical

12

personnel at SCI-Albion administered the J&J vaccine to him on May 4, 2021, and that he "was never informed about restrictions by the F.D.A. being placed on the J&J vaccine because of blood clotting." ECF No. 32, pp. 2–3. As a result, Farmer-Shaw contends he "did not have a clear understanding of the nature and risks of blood clots forming in the body in order to agree to that willingly." *Id.*, p. 2. He further alleges Defendants knew about the risks associated with the J&J vaccine and intentionally withheld this information from inmates in order to persuade the inmate population to accept the vaccine. *Id.*, p. 3. Ten months after receiving the J&J vaccine, Farmer-Shaw experienced a blood clot in his left leg. He avers in his supporting affidavit that it was not until he reported his health problems that he "was told about blood clots, and the vaccine's dangerous effects." ECF No. 81-2, ¶ 6.

Defendants argue, however, that Farmer-Shaw was not denied information necessary to make an informed decision about whether to accept the J&J vaccine. Rather, the DOC had an informed consent policy in place disclosing to inmates the risks associated with the vaccine. Defendants point to Secretary Wetzel's May 3, 2021 memo on the J&J vaccine administration, the J&J Consent Form, and SCI-Albion's inmate vaccination procedures. *See* ECF No. 64, pp. 6–8. Though Farmer-Shaw maintains he never saw or received a copy of the Secretary's memo or the J&J Fact Sheet, Defendants aver they made the necessary information available to him and did not attempt to hide the risks of the J&J vaccine from Plaintiff. *Id.*, pp. 8–10. Defendants further submit that their actions comport with their legitimate

penological interest in vaccinating inmates as quickly as possible to prevent the spread of COVID-19 and keep everyone in the prison safe. *Id.*, pp. 10–13.

Viewing the record and all reasonable inferences to be drawn therefrom in Farmer-Shaw's favor, Farmer-Shaw fails to show a triable issue of material fact as to whether Defendants acted with deliberate indifference to his right to refuse treatment.

First, despite Farmer-Shaw's protestations to the contrary, the record reflects that SCI-Albion had an informed consent procedure in place when Farmer-Shaw received the J&J vaccine on May 4, 2021. This consisted of 1) the Secretary's May 3, 2021 memo describing the DOC's resumption of the J&J vaccine and its associated risks, 2) distribution of that memo to inmates by the Unit Managers and on the inmate channel, 3) the J&J Consent Form, and 4) SCI-Albion's practice of sending nursing teams to the housing units to administer vaccines to inmates who requested it and signed the consent. The Secretary's memo and the J&J Consent Form are particularly relevant here.

Though Farmer-Shaw denies he ever saw the Secretary's memo or was otherwise informed of its contents, the memo evidences Defendants' efforts to disclose to inmates information a reasonable patient would deem necessary to make an informed decision about whether to accept the J&J vaccine.[8]  The memo explained

---

[8] Defendants aver they notified inmates about the resumption of the J&J vaccine and its associated risks by distributing hard copies of the memo and displaying it on the inmate channel. *See* ECF No. 65-4, p. 2; ECF No. 65-5, p.1.  Farmer-Shaw makes various suppositions as to whether the inmate channel was accessible and viewable by all inmates, and whether the information contained in the Secretary's memo was comprehensible by the inmate population. *See* ECF No. 80, p. 15. But Farmer-Shaw never claims he was unable to view the inmate channel or that he could not read or understand the information provided.

there was a "conceivable, but rare" relationship between use of the J&J vaccine and "an increased risk of thrombosis (formation of blood clots) . . . *combined with* thrombocytopenia (low platelet level/low number of platelets in the blood)," with most cases occurring in females ages 18–49, and further described these conditions in lay terms. ECF No. 65, p. 1. The memo also stated inmates consenting to vaccination would have an opportunity to review the J&J Fact Sheet containing "information about the risks which have occurred in a very small number of people," and emphasized that inmates should ask any questions they had about the vaccine. *Id.*, pp. 1–2. Thus, while the memo itself does not prove Farmer-Shaw read it, it does refute his claim that SCI-Albion lacked a procedure to advise inmates of J&J's potential risks.

The J&J Consent Form further reflects Defendants' efforts to provide the information necessary for informed consent. The "Consent for Vaccination" paragraph provides that the inmate was offered the J&J Fact Sheet for review, that he "had the opportunity to review the letter from the Secretary of Corrections describing the re-initiation of the [J&J] vaccine," that he "understand[s] the possible risks and side effects of the vaccine," and that he "had the opportunity to have my questions answered by a medical professional." ECF 65-3, p. 2. Though the form does not specifically describe the risk of blood clots, these references in the "Consent for Vaccination" paragraph evidence Defendants' efforts to ensure inmates consenting to vaccination were aware of J&J's potential risks and that they had the opportunity to review the relevant documents and ask questions. Farmer-Shaw admits he answered

15

the questions on both sides of the J&J Consent Form and signed the first page.[9]  He

does not state whether he read the "Consent for Vaccination" paragraph on page two.

Even if he did not, any failure of Plaintiff to read the information provided certainly

does not support a finding of conscience-shocking conduct by Defendants.  *See*

*Leaphart v. Prison Health Servs., Inc.*, 2011 WL 2461955, at *13 n.5 (M.D. Pa. Apr.

28, 2011) ("disputes regarding . . . the degree to which [plaintiff] felt fully informed

when he consented to this [treatment] do not create a material factual issue on the

question of whether the Defendants' conduct meets the touchstone standard for a

constitutional infraction"), *report and recommendation adopted*, 2011 WL 2460958

(M.D. Pa. June 17, 2011).

Moreover, in the absence of any credible evidence to the contrary, that

Defendants utilized these documents and provided an informed consent procedure

refutes any claim by Farmer-Shaw that Defendants subjectively knew he was not

informed of J&J's risks.  *See Pabon*, 459 F.3d at 250 ("Inadvertent failures to impart

medical information cannot form the basis of a constitutional violation.  The simple

lack of due care does not make out a violation of either the substantive or procedural

aspects of the Due Process Clause of the Fourteenth Amendment.").

Second, Farmer-Shaw has not set forth any evidence from which a reasonable

jury could conclude that Defendants deliberately withheld information about J&J's

---

[9] Neither party offers an explanation as to why there are no signatures on page two of the J&J Consent Form.  Whether this was a simple oversight or something else, Farmer-Shaw has never alleged that he refused the vaccine.  *See Knight*, 942 F.3d at 343 ("[a] physician is deliberately indifferent to a patient's right to refuse treatment if the doctor subjectively knows that the patient did not consent to the treatment").  Rather, he contends he did not give fully informed consent because the DOC's policy restricting unvaccinated inmates' activities "suborned [his] will and coerced [him] to sign the Q&A documents" without being provided information about J&J's risks.  ECF No. 81-2, ¶ 4.

risks from him. For example, Farmer-Shaw does not say he asked any questions about the J&J vaccine and was denied or ignored, or that Defendants falsely told him there were not any risks. He also does not contend he requested a copy of the J&J Fact Sheet or other information and was refused. He complains he was not specifically told to read the information on the J&J Consent Form, but he does not contend he was prevented from doing so,[10] and no reasonable juror could find that such lack of instruction amounts to a Fourteenth Amendment violation. And, as noted above, even if Farmer-Shaw did not read the "Consent for Vaccination" paragraph, the information contained therein evidences Defendants' efforts to disclose, not withhold, information about J&J's risks. *See Leaphart*, 2011 WL 2461955, at *13 n.5 ("disputes regarding the degree to which the information was understood and accepted by [plaintiff] do not state a claim of a constitutional dimension"). Additionally, nothing in the record indicates Farmer-Shaw was at particular risk for developing blood clots such that Defendants should have done more to ensure he was informed of J&J's risks. The documents show most cases of thrombosis with thrombocytopenia occurred in females ages 18–49. Farmer-Shaw is not a member of that group, he did not indicate anything on the J&J Consent Form suggesting he was at risk for any adverse reactions to the vaccine, and he states in

---

[10] Neither party describes how or when SCI-Albion distributed the consent forms to inmates. Farmer-Shaw provides declarations from several other inmates which indicate the forms were passed out ahead of time to inmates in their cells and then collected by the nursing team during the vaccine administration. *See* ECF No. 81-3, ¶ 6; ECF No. 81-4, ¶ 3. Farmer-Shaw states in his supporting affidavit that he and the other inmates in his vaccination group "signed the forms as we were told without being asked to read them." ECF No. 81-2, ¶ 5. Nurse Gibbs avers she did not advise Farmer-Shaw to sign the consent form without reading it and did not see anyone else direct him to do so. ECF No. 65-5, ¶ 12.

the SAC that he has no history of blood clots in his family.  In short, aside from his own conclusory allegations, there is no evidence suggesting Defendants "intentionally hid any information about [J&J's] side effects from Plaintiff," *Sanders v. Ocean Cnty. Bd. of Freeholders*, 2021 WL 637828, at *3 (D.N.J. Feb. 18, 2021), or that Defendants "intentionally misled Plaintiff for the purpose of depriving him of his right to refuse the [vaccine]," *Licerio v. Lamb*, 2021 WL 4550692, at *16 (D. Colo. July 15, 2021), *report and recommendation adopted*, 2021 WL 4167341 (D. Colo. Sept. 14, 2021), *aff'd*, 2022 WL 4100400 (10th Cir. Sept. 8, 2022).  Without more, Farmer-Shaw cannot show Defendants' alleged failure to inform him of J&J's risks implicates the conscience-shocking behavior necessary for deliberate indifference.  *See Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 328 (3d Cir. 2016) ("conjecture and speculation" cannot create a genuine issue of material fact); *Coit v. Garman*, 812 F. App'x 83, 87–88 (3d Cir. 2020) (vague and conclusory allegations are insufficient to create issues of material fact to preclude summary judgment); *e.g.*, *Sanders*, 2021 WL 637828, at *3 (absent showing of deliberate indifference, failure to inform patient of potential side effects "amounts to, at most, medical malpractice or negligence"); *Smith v. Corizon Health Servs.*, 2015 WL 6123563, at *2 (S.D.N.Y. Oct. 16, 2015) (health worker's mere failure to inform prisoner of medication's risks insufficient to show deliberate indifference).

Third, under the circumstances here, the allegations and record do not support a finding of any unconstitutional conduct by Defendants.  As the Third Circuit has observed, the COVID-19 pandemic "present[ed] 'highly unusual and unique

circumstances' that . . . 'radically transformed our everyday lives in ways previously inconceivable' and . . . 'altered [our world] with lightning speed . . . and unprecedented [results].'" *Hope*, 972 F.3d at 330 (alterations in original) (quoting district court opinion). Thus, "deference is due prisoner administrators [in the context of evaluating their response to the pandemic]." *Id.* The Secretary issued his memo on May 3, 2021, and the DOC resumed use of the J&J vaccine that same day. Defendants thus had little time to distribute copies of the memo or the revised J&J Fact Sheet before Farmer-Shaw received the vaccine on May 4, 2021. Once the DOC determined to resume use of the J&J vaccine, "it might have been prudent, under normal circumstances, for Defendants to have . . . posted [these documents] for a period of time prior to administering the vaccine." *Bird v. Martinez-Ellis*, 582 F. Supp. 3d 909, 920 (D. Wyo. 2022), *aff'd*, 2022 WL 17973581 (10th Cir. Dec. 28, 2022). "However, considering Defendants' actions in the context of the COVID-19 pandemic," as the Court must, and considering further that Farmer-Shaw is not a member of the group at an increased risk for blood clots and that the DOC resumed use of J&J in accordance with federal guidance, "the allegation that Defendants proceeded with the voluntary vaccinations without first . . . providing the [J&J] information sheet to Plaintiff[] does not 'shock the conscience.'" *Id.* Rather, even if Defendants withheld information about J&J's risks because they were concerned that inmates might decline vaccination if so informed, such conduct reflects "actions taken during the height of the COVID-19 pandemic to protect the health and safety of the inmates involved and others in the prison environment by increasing vaccination

rates." *Bird*, 2022 WL 17973581, at *4. "Where '[e]xigent circumstances' are present, 'even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed,'" *Bird*, 582 F. Supp. 3d at 920 (quoting *Pabon*, 459 F.3d at 251), and "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process," *Lewis*, 523 U.S. at 849.

Finally, to the extent Farmer-Shaw's deliberate indifference allegations are premised on the DOC's policy of separating unvaccinated inmates and offering an incentive to receive the vaccine, district courts have found that such policies do not violate the Constitution. *E.g.*, *Fennell v. Wetzel*, 2023 WL 1997116, at *5 (M.D. Pa. Feb. 14, 2023), *appeal dismissed*, 2023 WL 5608411 (3d Cir. June 6, 2023); *Burton v. Wetzel*, 2023 WL 5804324, at *3 (M.D. Pa. Sept. 7, 2023); *Gibson v. Johnson & Johnson*, 2023 WL 4672388, at *8 (E.D. Pa. July 19, 2023); *Ford v. Northam*, 2023 WL 2767780, at *17 (W.D. Va. Mar. 31, 2023), *aff'd*, 2023 WL 6057493 (4th Cir. Sept. 18, 2023), *cert. denied*, 144 S. Ct. 1358 (2024). Indeed, as this Court previously observed, such policies are "rationally related to the legitimate penological interest of mitigating the spread of a highly contagious disease." ECF No. 44, p. 5. Though Farmer-Shaw continues to claim the DOC's policy was "the motivating factor" that coerced his consent, as these courts have recognized, such policies provide inmates with a choice to decline vaccination and do not forcibly compel inmates to be vaccinated against their will. That Farmer-Shaw did not like the choice presented

20

does not mean Defendants were deliberately indifferent to his right to refuse treatment.

For all of these reasons, Farmer-Shaw fails to demonstrate a triable factual issue as to whether Defendants acted with deliberate indifference to his right to refuse treatment. Thus, even assuming Farmer-Shaw can prevail on the first and third elements of his informed consent claim, summary judgment for Defendants is warranted because he fails to come forward with evidence to support an essential element of his claim.

Moreover, even if the Court were to find a violation of Farmer-Shaw's right to informed consent, such right is outweighed by countervailing state interests. As the Third Circuit has instructed, the scope of an inmate's limited right to refuse treatment "must be circumscribed by legitimate countervailing State interests," and "courts owe substantial deference" to prison officials' judgments concerning inmates' medical care. *White*, 897 F.2d at 113. "Thus, a prison may compel a prisoner to submit to treatment despite his general right to refuse such treatment when prison officials, 'in the exercise of professional judgment, deem it necessary to carry out' legitimate penological objectives," such as "the treatment of an infectious disease." *Pabon*, 459 F.3d at 252 (quoting *White*, 897 F.2d at 113). Further, "because there is no constitutional right to refuse treatment" in such situations, "there is no corollary right to be informed about the treatment." *Id.*

There is no question that the DOC had a legitimate penological interest in administering vaccinations as quickly as possible to prevent the spread of COVID-19

21

and keep inmates and staff safe in the face of a deadly pandemic.[11] *Bird*, 582 F. Supp. 3d at 921 ("Considering the seriousness of the COVID-19 outbreak and the risk it posed to incarcerated prisoners, [the prison's] 'legitimate penological interests' in vaccinating its prisoners and staff as quickly as possible is 'not open to debate.'" (quoting *Pabon*, 459 F.3d at 252)). Farmer-Shaw contends Defendants intentionally withheld information about J&J's risks in order to persuade the inmate population to accept the vaccine. The corollary assumption is that if Defendants had disclosed J&J's risks, Plaintiff and others might have refused the vaccine—"thereby undermining the [DOC's] legitimate penological interest in 'vaccinating . . . prisoners . . . as quickly as possible.'" *Bird*, 2022 WL 17973581, at *4 (quoting district court opinion). Thus, on the facts of this case, Farmer-Shaw's right to be informed of J&J's risks is outweighed by the DOC's interest in quickly administering vaccinations to inmates to keep all persons in the prison safe. This is particularly true in light of the FDA and CDC's determination that it was safe to resume use of the J&J vaccine and that its benefits outweighed the risks, and considering that SCI-Albion's inmate population did not fit the demographic at increased risk of thrombosis with thrombocytopenia associated with J&J.

In sum, based on the undisputed facts and the record provided, the Court finds there is no evidence of record from which a reasonable juror could find that these

---

[11] Farmer-Shaw disputes the DOC's claimed interest in inmate health and safety because the DOC did not mandate vaccinations for staff or do more to increase staff vaccination rates. ECF No. 80, p. 10. But just because the DOC did "not mandate[] vaccinations for all prisoners or staff does not mean the administration of COVID-19 vaccines in [May] of 2021 to any prisoner who wanted one—in an effort to prevent a COVID-19 outbreak—was not a legitimate penological interest outweighing the prisoner's right to informed consent." *Bird*, 582 F. Supp. 3d at 921.

Defendants violated Farmer-Shaw's right to informed consent.  Though Defendants might have done more to ensure inmates were informed of J&J's risks before administering the vaccine, the record fails to support any conduct of Defendants that shocks the contemporary conscience.  Further, even if the record supported a violation of Farmer-Shaw's right to informed consent, under these circumstances, such right is outweighed by countervailing state interests.  Accordingly, Defendants are entitled to summary judgment on Farmer-Shaw's Fourteenth Amendment Claim.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'").[12]

## V.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 63) is GRANTED.

A separate order follows.

DATED this 14th day of January, 2026.

BY THE COURT:

_____
RICHARD A. LANZILLO
Chief United States Magistrate Judge

---

[12] In light of the foregoing analysis, the Court need not reach Defendants' additional arguments.